# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DARRELL LAMAR COLEMAN, | Case No. 4:24-cv-1544 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jonathan D. Greenberg |
| MADERITZ CONCRETE CONSTRUCTION, INC., *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Lamar Coleman, an inmate representing himself, brings this action under 42 U.S.C. § 1983 against a concrete company, the Ohio Department of Rehabilitation and Correction, and two correctional officers based on injuries sustained in another's inmate's attack on him using construction materials left unattended. The Ohio Department of Rehabilitation and Correction and the correctional officers move for judgment on the pleadings.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the Court must in the current procedural posture, Plaintiff bases his claims on the following events.

### A. Construction at Trumbull Correctional Institution

In the summer of 2023, the Ohio Department of Rehabilitation and Correction employed Maderitz Concrete Construction to replace asphalt walkways and driveways with concrete at the Trumbull Correctional Institution. (ECF No. 36,

PageID #204.) The demolition of the old walkways and driveways left chunks of asphalt in the prison yard. (*Id.*) More than a month before the events giving rise to this case, another inmate committed an assault with a piece of asphalt from the same construction site. (*Id.*, PageID #205.) Prison staff later acknowledged that "several construction projects . . . create[] a greater risk for weapons." (ECF No. 36-1, PageID #209.)

### B. The Attack on Mr. Coleman (July 18, 2023)

Early in the morning on July 18, 2023, Mr. Coleman and a fellow inmate left the chow hall. (*Id.*, PageID #204.) As they were speaking, inmate Ricky Hill approached them and asked how things were in Mr. Coleman's cell block. (*Id.*) Mr. Coleman told Hill that things were "slow." (*Id.*) As Mr. Coleman returned to his conversation, Hill "blind-sided" Mr. Coleman and struck him multiple times in the face with a piece of asphalt left by the construction company. (*Id.*) The blows caused Mr. Coleman to bleed from his face, nose, and mouth. (*Id.*)

No correctional officers were present in the yard "between the chow hall and medical" where Mr. Coleman was assaulted. (*Id.*, PageID #205.) Because of "inmates going to breakfast and getting morning medications," that location is the "highest traffic area in the prison in the morning." (*Id.*, PageID #205–07.) With no officers in the area to stop him, Hill "pursued [Mr. Coleman] into medical" and was not taken into custody until he had left the infirmary. (*Id.*, PageID #206.)

Two hours later, Mr. Coleman was taken to a hospital, where he received fifteen stitches. (*Id.*, PageID #204.) When Mr. Coleman returned from the hospital, no one at Trumbull Correctional Institution gave him anything to clean his wounds.

(*Id.*, PageID #205.) Six days later, Mr. Coleman received diagnostic imaging because of "sharp pain" in his eyes, nose, mouth, head, and lower back. (*Id.*)

As a result of this attack, Mr. Coleman has scars on his face and inside his mouth, reoccurring neck pain, frequent headaches, and pain in his mouth and eyes. (*Id.*, PageID #207.) The hospital billed him $1,718.00 for the treatment of his injuries. (ECF No. 36-3.) Additionally, he lives in fear of another assault, which causes him to feel anxious when others approach him. (ECF No. 36; PageID #207.)

### C. The Grievance Process

On July 26, 2023, Mr. Coleman filed an informal complaint with Trumbull Correctional Institution regarding the assault on him "with a slab of asphalt concrete." (ECF No. 36-1, PageID #210.) In the informal complaint, Mr. Coleman reported the events of July 18, 2023 and complained that "the negligence from the construction company" and those overseeing the construction operations allowed Hill to "get hold of this caliber of weapon." (*Id.*) On July 31, 2023, a staff member expressed sympathy and acknowledged that "these construction projects have created a greater risk for our staff," but responded that the staff "have done [their] due diligence in monitoring all movement." (*Id.*, PageID #210.) That same day, Mr. Coleman appealed and escalated the complaint to a grievance. (*Id.*, PageID #209–10.) The appeal was denied, but a staff member again acknowledged that the institution had "several construction projects which create[d] a greater risk for weapons." (*Id.*, PageID #209.) Then, Mr. Coleman appealed the denial of his grievance, but that appeal was again denied. (*Id.*, PageID #208.) In denying the appeal, the Office of the Chief Inspector noted that the incident, "while unfortunate,

3

occurred as a result of the actions taken by another individual" and indicated that no further action would be taken. (*Id.*, PageID #208.)

## STATEMENT OF THE CASE

On September 11, 2024, after going through the grievance process, Mr. Coleman filed a complaint in federal court against Maderitz Concrete Construction, the Ohio Department of Rehabilitation and Correction, and "Major Hill" and "Captain Burke" in their "official, individual[,] and personal capacities." (ECF No. 1, PageID #203–04.) Against Maderitz Concrete Construction, Plaintiff brings a claim for negligence. (ECF No. 36, PageID 205–06.)

Plaintiff asserts that Major Hill and Captain Burke failed to uphold their duty to ensure officers were present to secure the yard and protect inmates, staff, and other officers from "the known increased risk of . . . assault with [a] . . . deadly weapon." (ECF No. 36, PageID #205.) The amended complaint alleges that "Major Hill and Captain Burke, who was working as a Shift Captain that day, failed to ensure that officers were placed to secure the area and protect inmates" notwithstanding the known risk from the construction. (ECF No. 36, PageID #205.) Beyond that allegation, the amended complaint states that Major Hill "is responsible for the security of the institution and was present on the grounds of" the prison when Mr. Coleman was assaulted. (*Id.*, PageID #206.) It places responsibility on Captain Burke for "officer assignment and placement at TCI on the day and time in question as Shift Captain." (*Id.*, PageID #205.)

4

In his amended complaint, Plaintiff seeks "compensatory, punitive, and nominal damages." (ECF No. 36, PageID #207.) The cover page of the complaint indicates that Plaintiff brings a claim under 42 U.S.C. § 1983. (ECF No. 1-1.) Against these Defendants, the Court reads these claims as ones for deliberate indifference and failure to protect, both arising under the Eighth Amendment, as does Plaintiff. (ECF No. 33, PageID #190.)

Plaintiff moved for appointment of counsel (ECF No. 10), which the Court denied (ECF No. 27). The Ohio Department of Rehabilitation and Correction, Major Hill, and Captain Burke answered then moved for judgment on the pleadings. (ECF No. 28.) For ease of reference, this Opinion and Order references these parties as "Defendants," even though Maderitz Concrete Construction does not join the motion. In briefing on the motion, Plaintiff clarified that he does not bring any State-law claims against the moving Defendants (ECF No. 33, PageID #189–90), and the amended complaint does not suggest any.

Following Defendants' motion for judgment on the pleadings, Plaintiff filed an amended complaint. (ECF No. 36.) The Ohio Department of Rehabilitation and Correction, Major Hill, and Captain Burke did not renew their motion for judgment on the pleadings. Usually, amendment of the complaint renders a pending motion under Rule 12 moot. *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002). However, if the amended complaint has the deficiencies that form the basis of the motion for judgment on the pleadings, then the motion is not moot, and the Court can rule on its merits. *Id.* Here, the only difference between Plaintiff's

5

original complaint and his amended complaint is that he changed "Maderitz Concrete Company" to "Maderitz Concrete Construction, Inc." in the caption. (ECF No. 1, PageID #1; ECF No. 36, PageID #208.) Because the complaints are essentially identical, the Court takes Defendant's motion as addressing the amended pleading.

## ANALYSIS

"The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)); *see also Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016).

Therefore, on a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). "In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but

6

not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

While "the court's decision rests primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (citation modified). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers, *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### I. Deliberate Indifference and Failure to Protect

Based on the Court's review of the amended complaint, including the attachments to it, and the parties' briefs, Plaintiff's claims under Section 1983 for deliberate indifference and failure to protect proceed from the same facts. Specifically, he claims that Major Hill had responsibility for security at Trumbull

7

Correctional Institution on the day of the assault and that Captain Burke was the shift captain in charge at that time. (ECF No. 36, PageID #205–06.) Based on the acknowledgement in the grievance process that "Trumbull Correctional Institution currently has several construction projects which creates a greater risk for weapons," he alleges that these officers, because of their roles at the institution, had the requisite knowledge to state these claims. (ECF No. 36-1, PageID #209.) His claim for deliberate difference does not relate the medical care he received following the assault. (*See, e.g.*, ECF No. 33, PageID #186 ("Deliberate indifference is demonstrated by a failure to act in light of a known risk.").) Therefore, the Court analyzes these claims together.

### I.A. Individual Capacity Claims

Both of Plaintiff's claims allege a violation of the Eighth Amendment, which the courts have read to impose a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted); *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state an Eighth Amendment claim for failure to protect, Plaintiff must show that prison officials acted with deliberate indifference to a substantial risk of serious harm. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834) (further citation omitted). Plaintiff must show: (1) he was incarcerated under conditions that posed a serious risk of harm; and (2) the official knew of this serious

8

risk but failed to take reasonable steps to abate it. *Farmer*, 511 U.S. at 834, 827. When it comes to deliberate indifference relating to an inmate's conditions of confinement, a plaintiff must also plead and prove deliberate indifference. *See, e.g.*, *Rhodes v. Michigan*, 10 F.4th 665, 673–75 (6th Cir. 2021); *Roland v. Johnson*, 856 F.2d 764, 769–70 (6th Cir. 1988). A plaintiff challenging his conditions of confinement under the Eighth Amendment "must show that the prison officials acted with 'deliberate indifference' to a substantial risk of serious harm." *Rhodes*, 10 F.4th at 673 (cleaned up). This showing has both an objective and subjective component; the plaintiff must show that: (1) the deprivation was sufficiently serious on an objective basis; and (2) the official acted with deliberate indifference to the inmate's health or safety. *See id.* at 673–74.

Under these standards, Plaintiff pleads that conditions at Trumbull Correctional Institution posed a serious risk of harm and that this risk was sufficiently serious on an objective basis. Therefore, the question turns on the subjective state of mind of Major Hill and Captain Burke. At the pleading stage, a plaintiff satisfies the subjective component of the standard by alleging that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Under this standard, the Court concludes that the amended complaint, construed in Plaintiff's favor, fails to allege that Major Hill or Captain Burke

9

subjectively drew the inference that one inmate could attack another using construction materials in the prison yard as weapons. Although the amended complaint pleads that such a risk was obvious, the allegations stop short of claiming that Major Hill or Captain Burke subjectively had such knowledge. Indeed, the amended complaint proceeds on the basis that Major Hill "is responsible for the security of the institution and was present on the grounds of" the prison when Mr. Coleman was assaulted and that Captain Burke had responsibility on the day of the attack for "officer assignment and placement." (ECF No. 36, PageID #205 & #206.) But these alleged facts do not meet the subjective component of deliberate indifference. Moreover, they sound more in negligence than a constitutional violation of Mr. Coleman's rights. "Liability cannot be predicated on negligence alone; the inmate must demonstrate that prison officials acted with wantonness or deliberate indifference to his constitutionally protected needs." *Barajas v. Michigan Dep't of Corr.*, No. 93-1512, 1994 WL 88827, at *2 (6th Cir. Mar. 17, 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).

To be sure, the question of subjective knowledge on the facts alleged here presents a close question. The Supreme Court recognizes that a court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). But in *Hope*, the facts had a prison officer directly inflicting pain on an inmate—facts that express intent under general principles of causation and do not translate to the type of omission at issue here. And in *Farmer*, 511 U.S. at 842, the Supreme Court announced a standard for deliberate

10

indifference based on a prison official's act or failure to act "despite his knowledge of a substantial risk of serious harm" without the need to "believ[e] that harm actually would befall an inmate." More simply, subjective awareness of a risk may be inferred from circumstantial evidence, including the obviousness of the risk and the official's responsibilities. *Id.* at 832. These standards make the question close. In the Court's view, these governing principles fail to bridge the gap between the facts alleged in the amended complaint and the subjective knowledge of Major Hill or Captain Burke. In short, the allegations fail to suggest that either individual Defendant acted with the required intent to commit a constitutional violation. Either or both might have acted negligently or recklessly in a tortious sense, but that state of mind differs from what the Constitution requires to proceed with a claim under the Eighth Amendment.

### I.B. Official Capacity Claims

"[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *McPherson v. Cuyahoga Cnty.*, No. 1:20-cv-00639, 2021 WL 2841582, at *12 (N.D. Ohio July 8, 2021) (quoting *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009) (quoting *Monell*, 436 U.S. at 690 n.55)). Defendants argue that they are immune from suit in their official capacities because of State sovereign immunity under the Eleventh Amendment. (ECF No. 28, PageID #163–66.) In opposition, Plaintiff's argument regarding State sovereign immunity is as follows:

> With regard to claimed immunity in the Defendants' official capacities under the Eleventh Amendment, the Court is respectfully reminded that Defendants are being sued in their "official, individual, and personal capacities."

11

(ECF No. 33, PageID #189 (quoting ECF No. 36, PageID #204)). Plaintiff appears to concede that the Eleventh Amendment bars his claim against Defendants in their official capacities because he emphasizes that Defendants are also being sued in their "individual and personal capacities." (*Id.*) The concession makes sense. After all, Plaintiff seeks only money damages, and "state employees sued in their official capacities . . . [can]not be held liable for money damages." *Moore v. City of Harriman*, 272 F.3d 769, 771–72 (6th Cir. 2001) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

### I.C.  The Ohio Department of Rehabilitation and Correction

Dismissal of the Department is proper because it is a State agency and, therefore, not a "person" subject to suit under Section 1983. *See Will*, 491 U.S. at 71. "For the State of Ohio and ODRC, the Eleventh Amendment provides immunity from suits brought in federal court." *Kirkland v. ODRC*, No. 4:23-cv-00305, 2023 WL 8807240, at *5 (N.D. Ohio Dec. 19, 2023) (citing *Welch v. Texas Dep't of Highways & Publ. Transp.*, 483 U.S. 468 (1987)). While States may waive their Eleventh Amendment immunity, "Ohio has not done so for cases brought under Section 1983." *Id.* (citing *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992)). Eleventh Amendment immunity "extends to State agents and instrumentalities, like ODRC." *Id.* (citing *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 366 (6th Cir. 2008)). Therefore, Plaintiff's Section 1983 claims against the Ohio Department of Rehabilitation and Correction fails as a matter of law.

12

\* \* \*

For these reasons, the amended complaint fails to state a claim against Major Hill, Captain Burke, and the Ohio Department of Rehabilitation and Correction under Section 1983.

## II. Supplemental Jurisdiction

Plaintiff brings only a State-law claim for negligence against Maderitz Concrete Construction. (ECF No. 36, PageID 205–06.) The Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367. Under federal law, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462–63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex

13

issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Because the Court dismisses Plaintiff's federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiff's State-law claims and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiff's right to pursue the remaining claims in State court. *See* 28 U.S.C. § 1367(c)(3). "[G]enerally '[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).

Based on its review of the record, and because the case remains in its early stages, the Court declines to exercise its discretion to retain jurisdiction. Mr. Coleman may pursue his remaining claim in State court.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for judgment on the pleadings, **DISMISSES** the claims against Major Hill, Captain Burke, and the Ohio Department of Rehabilitation and Correction, and declines to exercise jurisdiction

14

over the remaining State-law claims. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Maderitz Concrete Construction.

 **SO ORDERED.**

Dated: October 11, 2025

                J. Philip Calabrese
                United States District Judge
                Northern District of Ohio